UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.:

**12-80975-Civ-Middlebrooks/Brannon**



FILED by OTS D.C.
ELECTRONIC

September 11, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

ALEX VERTUS

        Plaintiff,

v.

CITIBANK, N.A.

        Defendant.
_____/

### COMPLAINT

COMES NOW, the Plaintiff, ALEX VERTUS, (hereinafter "Plaintiff"), pro se, and hereby brings this action against Defendant, CITIBANK, N.A., a national association (hereinafter "Defendant"), for failure to comply with its statutory obligation pursuant to Title 15 of U.S.C.A. §§1693 et seq, commonly known as the Electronic Funds Transfer Act (EFTA).

### JURISDICTION

1. Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331 and §1693 *et seq*.

### VENUE

2. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391 (b) and (c), as the unlawful practices alleged herein took place in Palm Beach County, Florida, and the Defendant is a Corporation who transacts business in Palm Beach, Florida, and the transaction that is the basis of Plaintiff's Complaint occurred within the District and venue, therefore, properly lies in this Court.

### PARTIES

3. Plaintiff, ALEX VERTUS, is a natural person, a citizen of the United States, a resident of Lake Worth, in Palm Beach, County, Florida. Plaintiff was issued a debit card by the

1

2

Defendant. Plaintiff has been the sole owner of the account in question during the entire duration of the unauthorized transfers.

4. Defendant, CITIBANK, N.A., a national association, is doing business in Palm Beach, County, Florida, and has its principal place of business at 701 East 60th Street North, Sioux Falls, SD 57117. Defendant issued a debit card to Plaintiff together with a Personal Identification Number (PIN) which permitted Plaintiff to access funds from his Citibank accounts through Automated Teller Machines (ATM), signature and PIN-based point of sale (POS) transactions.

## FACTUAL ALLEGATIONS

## BACKGROUND

5. On June 25, 2012, Plaintiff went to a Citibank ATM to make cash withdrawal. The ATM posted an on-screen error message, which advised Plaintiff to contact Citibank.

6. Upon contacting Citibank, Plaintiff discovered that his Citibank Debit Master Card, albeit in his possession, was accessed without his authorization.

7. Plaintiff gave oral notice to Citibank Fraud Analyst, Mr. Jacob (did not provide his surname) that an "error" has occurred in his account, including the amount of such errors.

8. Defendant reviewed the alleged errors, asked Plaintiff a series of questions and concluded that Plaintiff's debit card was "most likely" compromised at a gas station in Miami, Florida.

9. Defendant provided Plaintiff with claim numbers (121 772 354 548; 121 780 002 358; 121 780 010 528; 121 780 016 518) and assured Plaintiff that, as the pattern of debit card activities appears to be fraudulent, Citibank would provisionally credit his account for the

2

amount loss within 24 to 48 hours while performing an investigation, which could take up to forty (45) days.

10. Defendant asked if Plaintiff had any question or comment, to which Plaintiff inquired whether he needed to contact the police for the investigation of his EFT fraud claim. Defendant responded that Citibank does not require EFT claimants to file police report and that Citibank can file its own report with government authorities if needed.

11. Plaintiff was advised by Defendant to follow up on his claims with written notice by visiting his local Citibank branch.

12. On June 26, 2012, Plaintiff went into his Citibank branch, obtained account statements, circled all unauthorized transactions, and gave the written notice to the branch manager, Victor. The branch manager submitted Plaintiff's written notice via facsimile to Citibank fraud department.

13. While there, the branch manager also interviewed Plaintiff regarding the circumstances of his unauthorized EFT claims. During this meeting with the Citibank manager, Plaintiff learned that, in addition to the original debit card ending in 9197 (secured in his possession) which was fraudulently accessed, Citibank had also sent out another card ending in 9195 to someone pretending to be the Plaintiff without Plaintiff's authorization.

14. According to the branch manager, notations in Plaintiff's account profile noted that Plaintiff's debit card was permanently "blocked" on May 8, 2012 "due to possible account takeover" and that Plaintiff was required to go into a Citibank branch in order to obtain a new debit card.

15. During the meeting with the branch manager, Plaintiff also discovered that the phone number in his account was changed without his authorization so as to facilitate the fraud.

3

16. On June 26, 2012, Plaintiff spoke with Tom Gough from Citibank fraud department to inquire whether Citibank was in receipt of Plaintiff's written notice of alleged errors, to wit, the bank statements with the circled unauthorized transactions.

17. On June 26, 2012, Defendant, through Tom Gough, also received oral notice of additional alleged errors that, although disputed with the first fraud analyst (Jacob), were never computed in the initial notice of errors from Plaintiff. Plaintiff was given claim number 121 811 259 138.

18. On July 2, 2012, Defendant recredited Plaintiff's account in the amount of $85.00 for an unauthorized METROPCS debit purchase, which occurred on June 8, 2012.

19. On July 3, 2012, Plaintiff received a telephone call from a Citibank fraud investigator who identified himself as Mr. Amadeo (declined to provide surname). Mr. Amadeo interviewed Plaintiff extensively and Plaintiff answered all his questions truthfully without any reservation.

20. Mr. Amadeo inquired whether or not Plaintiff filed a police report in connection with the unauthorized claims and Plaintiff informed Amadeo that the fraud analyst who initially took down the claims said it wasn't required. Mr. Amadeo confirmed Mr. Jacob's statement that "Citibank does not require a police report." However, Mr. Amadeo offered that he would recommend to any victim of fraud to file a police report.

21. On July 4, 2012, Plaintiff filed a police report (Case#:12-094295) regarding his unauthorized EFT claims with the Palm Beach County Sheriff's Office.

22. In a letter dated July 09, 2012, Citibank, without an explanation, concluded that the transactions were "authorized" and is "unable to honor it." A copy of the July 09, 2012 letter is attached hereto as **Exhibit "A."** The letter advised Plaintiff that he is entitled by

law to request the documents upon which the Defendant relied for its conclusion that the disputed transactions were authorized. Id.

23. In a letter dated July 12, 2012, Plaintiff, via facsimiles, followed by writing, requested the documents that Defendant used in its investigation when it concluded that the dispute transactions were authorized. A copy of the July 12, 2012 letter is attached hereto as **Exhibit "B"** and the proof of service for same is attached hereto as **Exhibit "C."** The Defendant never responded to Plaintiff's several requests for those documents evidencing "authorization."

24. Upon Plaintiff's requests, Citibank performed two additional investigations of Plaintiff's claims and both resulted in same conclusions, i.e, the transactions were authorized.

25. In the Defendant's July 9, 2012 letter informing Plaintiff that it concluded the disputed transactions were authorized, Defendant did not properly compute the amount of Plaintiff's unauthorized claims.

26. Plaintiff gave several oral and written notices to Defendant that the disputed unauthorized transactions amount was miscalculated. A copy of the notice is attached as **Exhibit "D"** and the proof of service for same is attached hereto as **Exhibit "E."** However, Defendant ignored Plaintiff's pleas to correct the amount of his unauthorized transactions claims.

## THE ELECTRONIC FUND TRANSFER ACT

27. The EFTA, codified at 15 U.S.C. §§ 1693 et seq, provides, in relevant part, as follows:

### 15 U.S.C. § 1693f. Error Resolution

**(a) Notification to financial institution of error**
If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 1693d (a), (c), or (d) of this title or notification

5

pursuant to section 1693d (b) of this title, receives oral or written notice in which the consumer—[1]
    (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
    (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 1693d (b) of this title, the consumer's account, contains an error and the amount of such error; and
    (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred, the financial institution *shall investigate the alleged error*, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. The financial institution may require written confirmation to be provided to it within ten business days of an oral notification of error if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c) of this section, nor shall the financial institution be liable under subsection (e) of this section if the written confirmation is not received within the ten-day period referred to in the previous sentence.

(Emphasis added).

**(d) Absence of error; finding; explanation**
If the financial institution determines after its investigation pursuant to subsection (a) or (c) of this section that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and *upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents* which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

(Emphasis added)

**(e) Treble damages**
If in any action under section 1693m of this title, the court finds that—
    (1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c) of this section, and the financial institution
        (A) did not make a good faith investigation of the alleged error, or
        (B) did not have a reasonable basis for believing that the consumer's account was not in error; or
    (2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably

---

[1] "Consumer" is defined as a "natural person." 15 U.S.C § 1693a(5).

6

have been drawn from the evidence available to the financial institution at the time of its investigation,

then the consumer shall be entitled to treble damages determined under section 1693m (a)(1) of this title.

**(f) Acts constituting error**
For the purpose of this section, an error consists of—
    (1) *an unauthorized electronic fund transfer*;
    (2) an incorrect electronic fund transfer from or to the consumer's account;
    (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;
    (4) *a computational error by the financial institution*;
    (5) the consumer's receipt of an incorrect amount of money from an electronic terminal;
    (6) *a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required* by this subchapter;or
    (7) any other error described in regulations of the Board.

(Emphasis added).

**COUNT I**
**ELECTRONIC FUND TRANSFER ACT**
**[15 U.S.C. § 1693f(e)(1)(A)]**

28. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this complaint with the same force and effect as though fully set forth herein.

29. This is an action for damages pursuant to 15 U.S.C. § 1693f.

30. Beginning April 16, 2012 through June 20, 2012, Defendant authorized unknown perpetrator (s), through the use of a duplicated debit card, to access Plaintiff's deposits on a daily basis and made unusually large cash ATM withdrawals, signature and PIN-based point of sale (POS) transactions without Plaintiff's authorization.

31. Plaintiff gave timely oral and written notices to Defendant as required by the Electronic Fund Transfer Act. *See.* 15 U.S.C. § 1693f(a).

7

32. Defendant summarily denied Plaintiff's unauthorized claims without performing a good faith and reasonable investigation as required under the EFTA.

33. Defendant violated the EFTA when it failed, as promised, to recredit Plaintiff's account for the amount alleged to be in error during its investigation of Plaintiff's claims.

34. Defendant further violated the EFTA because it did not make a good faith investigation of the alleged errors.

35. Defendant is still in violation of the EFTA to date because it has yet to credit Plaintiff's account for the amount alleged to be in error.

36. As a direct cause of Defendant's unlawful action, Plaintiff was and is continued to be deprived of his right to his hard-earned money and all the benefit derived therefrom, and has suffered damages in the principal amount of 57,614.07.

37. Pursuant to 15 U.S.C. § 1693f(e)(1)(A), Plaintiff is entitled to treble damages in the amount of $172,842.21 for the EFTA violation committed by Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for treble damages pursuant to 15 U.S.C. § 1693f(e)(1)(A); punitive damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); cost of the action pursuant to 15 U.S.C. § 1693m(a)(3); consequential and compensatory damages as a result of lost opportunities.

## COUNT II
## ELECTRONIC FUND TRANSFER ACT
## [15 U.S.C. § 1693f(e)(1)(B)]

38. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this complaint with the same force and effect as though fully set forth herein.

39. This is an action for damages pursuant to 15 U.S.C. § 1693f.

8

40. Beginning April 16, 2012 through June 20, 2012, Defendant authorized unknown perpetrator (s), through the use of a duplicated debit card, to access Plaintiff's deposits on a daily basis and made unusually large cash ATM withdrawals, signature and PIN-based point of sale (POS) transactions without Plaintiff's authorization.

41. Plaintiff gave timely oral and written notices to Defendant as required by the Electronic Fund Transfer Act. *See*. 15 U.S.C. § 1693f(a).

42. Defendant's July 09, 2012 letter to Plaintiff stated that Citibank would not honor Plaintiff's claims because "Your Citibank Banking Card and Personal Identification Number were required to perform these withdrawals," is a conclusion at odds with Defendant's initial statement on June 25, 2012 that Plaintiff's debit card was "most likely" compromised at a gas station in Miami.

43. Defendant violated the EFTA when it, as promised, failed to recredit Plaintiff's account for the amount alleged to be in error during its investigation of Plaintiff's claims.

44. Defendant further violated the EFTA because did not have a reasonable basis for believing that the consumer's account was not in error.

45. Defendant is still in violation of the EFTA to date because it has yet to credit Plaintiff's account for the amount alleged to be in error.

46. As a direct cause of Defendant's unlawful action, Plaintiff was and is continued to be deprived of his right to his hard-earned money and all the benefit derived therefrom, and has suffered damages in the principal amount of 57,614.07.

47. Pursuant to 15 U.S.C. § 1693f(e)(1)(B), Plaintiff is entitled to treble damages in the amount of $172,842.21 for the EFTA violation committed by Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for treble damages pursuant to 15 U.S.C. § 1693f(e)(1)(B); punitive damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); cost of the action pursuant to 15 U.S.C. § 1693m(a)(3); consequential and compensatory damages as a result of lost opportunities.

**COUNT III**
**ELECTRONIC FUND TRANSFER ACT**
**[15 U.S.C. § 1693f(e)(2)]**

48. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this complaint with the same force and effect as though fully set forth herein.

49. This is an action for damages pursuant to 15 U.S.C. § 1693f.

50. Beginning April 16, 2012 through June 20, 2012, Defendant authorized unknown perpetrator (s), through the use of a duplicated debit card, to access Plaintiff's deposits on a daily basis and made unusually large cash ATM withdrawals, signature and PIN-based point of sale (POS) transactions without Plaintiff's authorization.

51. Plaintiff gave timely oral and written notices to Defendant as required by the Electronic Fund Transfer Act. *See*. 15 U.S.C. § 1693f(a).

52. Defendant willfully violated the EFTA when it concluded for all three investigations that the disputed transactions were authorized, but yet refused to submit evidence of authorization to affirmatively prove Plaintiff as the perpetrator of the fraud.

53. Defendant knowingly violated the EFTA because while concluding that the disputed transactions were authorized, it failed to comply with the consumer liability provision of the EFTA. *See*. 15 U.S.C. § 1693g.

10

54. Section 1693g(a) of the Act provides that "A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer <u>only if the financial institution has provided a means whereby the user of such card can be identified as the person authorized to use it</u>, such as by *signature, photograph, or fingerprint*. See. 15 U.S.C. § 1693g(a). (Emphasis supplied).

55. The fact that Defendant refused to mail to Plaintiff the documents upon which it relied to deny his claims is a clear indication that it did not identify Plaintiff as the person authorized to use the card. *Id.*

56. Defendant conduct in this case is egregious, malicious, evil and intended to injure Plaintiff.

57. Defendant's malicious conduct undoubtedly shows that the financial institution *knowingly* and *willfully* concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation.

58. As a direct cause of Defendant's unlawful action, Plaintiff was and is continued to be deprived of his right to his hard-earned money and all the benefit therefrom, and has suffered damages in the principal amount of 57,614.07.

59. Pursuant to 15 U.S.C. § 1693f(e)(2), Plaintiff is entitled to treble damages in the amount of $172,842.21 for the EFTA violation committed by Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for treble damages pursuant to 15 U.S.C. § 1693f(e)(2); punitive damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); cost of the action pursuant to 15 U.S.C. § 1693m(a)(3); consequential and compensatory damages as a result of lost opportunities.

11

## COUNT IV
## ELECTRONIC FUND TRANSFER ACT
## [15 U.S.C. § 1693f(d)]

60. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this complaint with the same force and effect as though fully set forth herein.

61. This is an action for damages pursuant to 15 U.S.C. § 1693f.

62. Beginning April 16, 2012 through June 20, 2012, Defendant authorized unknown perpetrator (s), through the use of a duplicated debit card, to access Plaintiff's deposits on a daily basis and made unusually large cash ATM withdrawals, signature and PIN-based point of sale (POS) transactions without Plaintiff's authorization.

63. Plaintiff gave timely oral and written notices to Defendant as required by the Electronic Fund Transfer Act. *See*. 15 U.S.C. § 1693f(a).

64. Upon receipt of Defendant's letter which concluded that the disputed transactions were authorized, Plaintiff, in a letter dated July 12, 2012, requested from Defendant the documents the financial institution relied on during its investigation to reach its conclusion that the transactions were authorized.

65. Defendant refused to mail to Plaintiff the documents that it used during its investigation, in violation of the Act. *See*. 15 U.S.C. § 1693f(d).

66. Pursuant to 15 U.S.C. § 1693m(a)(1), Plaintiff is entitled to actual damages in the amount of $57,614.07 for the EFTA violation committed by Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages pursuant to 15 U.S.C. §1693m(a)(1); punitive damages pursuant to 15 U.S.C. § 1693m(a)(2)(A);

cost of the action pursuant to 15 U.S.C. § 1693m(a)(3); consequential and compensatory damages as a result of lost opportunities.

**COUNT V**
**ELECTRONIC FUND TRANSFER ACT**
**[15 U.S.C. § 1693f(f)(4)]**

67. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 of this complaint with the same force and effect as though fully set forth herein.

68. This is an action for damages pursuant to 15 U.S.C. § 1693f.

69. Beginning April 16, 2012 through June 20, 2012, Defendant authorized unknown perpetrator (s), through the use of a duplicated debit card, to access Plaintiff's deposits on a daily basis and made unusually large cash ATM withdrawals, signature and PIN-based point of sale (POS) transactions without Plaintiff's authorization.

70. Plaintiff gave timely oral and written notices to Defendant as required by the Electronic Fund Transfer Act. *See*. 15 U.S.C. § 1693f(a).

71. Plaintiff also gave oral and written notices to Defendant informing it that it had miscalculated Plaintiff's unauthorized claim amount.

72. Despite Plaintiff's notice to Defendant to correct the disputed amount of his claims, Defendant failed to include the additional disputed transactions in its computation of Plaintiff's claims in violation of law. *See*. 15 U.S.C. § 1693f(f)(4).

73. The Act provides that *a computational error* by the financial institution constitutes an "error" to which Defendant may be held liable. *Id*.

74. As a direct cause of Defendant's unlawful action, Plaintiff was and is continued to be deprived of his right to his hard-earned money and all the benefit therefrom, and has suffered damages in the principal amount of 57,614.07

75. Pursuant to 15 U.S.C. § 1693m(a)(1), Plaintiff is entitled to actual damages in the amount of $57,614.07 for the EFTA violation committed by Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages pursuant to 15 U.S.C. §1693m(a)(1); punitive damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); cost of the action pursuant to 15 U.S.C. § 1693m(a)(3); consequential and compensatory damages as a result of lost opportunities.

## DEMAND FOR JURY TRIAL

76. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues raised herein under Count I to V of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Citibank as follows:

(a) For Judgment against Defendant as requested in each of the five (5) foregoing cause of action including any and all other relief this Court deemed just and proper.

Dated: September 11, 2012

Respectfully Submitted,

ALEX   VERTUS
1230 North F. Street
Lake Worth, FL 33460
(561) 234-5137
Vertus26@gmail.com

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was furnished on September 11, 2012 via Personal Service on all counsel or parties of record on the Service List below.

*[signature]*

ALEX   VERTUS, Pro Se

## SERVICE LIST

CITIBANK, N.A.
c/o C T Corporation System
Registered Agent for Citibank
1200 South Pine Island Road
Plantation, FL  33324
Phone: 954-473-5503